**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| PATRICIA ALLEN, | § | |
|         Plaintiff, | § | |
| V. | § | |
| | § | |
| WASHINGTON MUTUAL BANK, | § | A-15-CV-0411-LY-ML |
| SELECT PORTFOLIO SERVICING, INC., | § | |
| LONG BEACH SECURITIES CORP., | § | |
| DEUTSCHE BANK NATIONAL TRUST | § | |
| COMPANY AS TRUSTEE FOR LONG | § | |
| BEACH MORTGAGE LAON TRUST | § | |
| 2006-9, AND DOES I-X, | § | |
|         Defendants. | § | |
| | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are Defendants Washington Mutual Bank ("WaMu"), Select Portfolio Servicing, Inc. ("SPS"), Long Beach Securities Corp. ("Long Beach"), and Deutsche Bank National Trust Company as Trustee for Long Beach Mortgage Loan Trust 2006-9 ("Deutsche Bank") (collectively, "Defendants")' Notice of Removal [Dkt. #1], filed May 15, 2015, and Motion to Dismiss [Dkt. #6], filed June 12, 2015. Plaintiff Patricia Allen has not contested removal, and the time to do so on any grounds other than lack of subject matter jurisdiction has expired. 28 U.S.C. § 1447(c). Plaintiff has not responded to the Motion to Dismiss, and the time to do so has expired under Local Rule CV-7(e).

All pending nondispositive motions in the above-styled cause have been referred to the undersigned by United States District Judge, Lee Yeakel, for resolution pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Likewise, all

dispositive motions have been referred to the undersigned for a Report and Recommendation as to the merits pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.  After reviewing the pending motions, the relevant case law, as well as the entire case file, the undersigned issues the following Report and Recommendation.

## I.      Background

On April 1, 2015, Plaintiff Patricia Allen ("Plaintiff") filed her original Petition in the 98th Judicial District Court of Travis County, Texas, styled *Patricia Allen, Attorneys Pro Se v. Washington Mutual Bank, Select Portfolio Servicing Inc., Long Beach Securities Corp., Deutsche Bank National Trust Company as Trustee for Long Beach Mortgage Loan Trust 2006-9, and Does I-X*, Cause No. D-l-GN-15-001221.  Notice of Removal [Dkt. #1], Ex. B, Orig. Pet.  Plaintiff's original Petition sought a declaratory judgment that Defendants could not pursue administrative foreclosure on Plaintiff's home, located at 7320 Gaines Mill Lane, Austin, Texas 78745 ("the Property). Orig. Pet. ¶¶ 2, 48.  Plaintiff also asserted claims against Defendant WaMu for breach of contract and against all Defendants for slander of title.  *Id.* at ¶¶ 29-38.

Plaintiff's factual allegations are as follows:  She resides on the Property.  *Id.* at ¶ 2.  On or about August 25, 2006, Plaintiff executed a Tangible Texas Home Equity Security Instrument (the "Security Instrument") in the amount of $152,000 (one hundred fifty-two thousand dollars) in favor of Defendant WaMu.  *Id.* at ¶ 9.  The Security Instrument was recorded in the official records of the Travis County Clerk in the name of Washington Mutual Bank on or about August 31, 2006.  *Id.* at ¶ 10.

Plaintiff alleges WaMu then sold the Security Instrument to Long Beach pursuant to a Special Purpose Vehicle (Long Beach Mortgage Loan Trust 2006-9) Pooling and Servicing

Agreement (PSA) dated October 1, 2006.  *Id.* at ¶ 11.  Plaintiff contends WaMu's sale of the Security Instrument to Long Beach should have triggered "Covenant 22" of the Security Instrument, which provides that "[w]ithin a reasonable time after termination and full payment of the Extension of Credit, the lender shall cancel and return the note to the owner of the property and give the owner, in recordable form, a release of the lien securing the Extension of Credit . . . ."  *Id.* at ¶ 12.  Additionally, she contends the "local law of [the] jurisdiction" required Long Beach to properly perfect its interest in the Security Instrument by recording it.  *Id.* at ¶13.

Plaintiff alleges Long Beach "bifurcate[ed] rights to the payment stream intangible payment obligation evidenced by the [Security Instrument]" and conveyed a "separate and distinct intangible obligation to Long Beach Mortgage Loan Trust 2006-9" pursuant to the PSA.  *Id.* at ¶ 14.  This interest in the payment stream (the "transferable record," as Plaintiff terms it) was then "deposited and monetized in multiple classes of the Long Beach Mortgage Loan Trust 2006-9."  *Id.* at ¶ 22.  As a result, "payments under the . . . transferable record . . . are disbursed to the investors of Special Purpose Vehicle (Long Beach Mortgage Loan Trust 2006-9) holding certificates to the investment classes."  *Id.*  According to Plaintiff, Long Beach "purportedly sold" the Security Instrument to Long Beach Mortgage Loan Trust 2006-9 pursuant to the PSA.  *Id.* at ¶ 15.  Plaintiff contends these rights (the "transferable record" and the Security Instrument) "were not contemporaneously sold (conveyed)."  *Id.* at ¶ 16.

Plaintiff asserts that on July 14, 2008, two years after the assignment of the Security Instrument and the transferable record to Long Beach Mortgage Loan Trust 2006-9 pursuant to the PSA, WaMu executed an assignment of the Note and Deed of Trust on the Property, assigning the Note and Deed of Trust to Deutsche Bank National Trust Company as Trustee for

Long Beach Mortgage Loan Trust 2006-9 "as an alternate means of collection." *Id.* at ¶ 23. This assignment was recorded with the Travis County Clerk on July 18, 2008. *Id.* at ¶ 24.

Plaintiff alleges the July, 2008 assignment of the Note and Deed of Trust were void because "one cannot sell what one does not own," *id.* at ¶ 36.b, and at the time of the assignment, "all parties had knowledge the (personal property) security interest as collateral to the [Security Instrument] had been dissolved by operation of law . . .." *Id.* at ¶ 36.d. Specifically, Plaintiff contends that, by selling the Security Instrument to Long Beach, WaMu triggered the obligation under the Security Instrument Covenant 22 to release the note and lien on the Property, because Long Beach allegedly paid WaMu all sums due on the Security Instrument in the course of purchasing it. *Id.* at ¶ 12. Plaintiff further alleges that, by "bifurcating" the right to the payment stream from the Security Instrument, Defendant Long Beach "became the account debtor for the payment stream (transferable record) intangible obligation sold to the Defendant Long Beach Mortgage Loan Trust 2006-9." *Id.* at ¶ 44. Plaintiff further contends that this "bifurcation" of the payment stream from the Security Instrument "rendered the [Security Instrument] less than full value, *id.* at ¶ 45, and further "render[ed] the beneficial interest security (personal property) as an alternate means of collection a nullity by operation of statutory requirements of law." *Id.* at ¶ 46. For all these reasons, Plaintiff contends Defendants have no authority to foreclose on her property as an "alternate means of collection" of the amounts she owes on her $152,000 loan. *Id.* at ¶¶ 48-52.

Based on these sparse factual allegations and recitations of legal conclusions, Plaintiff asserts claims against WaMu for breach of contract (for failing to release the note and lien on the Property) and claims against all Defendants for slander of title (arising out of the assignment of the Note and Deed of Trust recorded July18, 2008). *Id.* at ¶¶ 29-38. Plaintiff additionally seeks

4

a declaratory judgment that, *inter alia*, Defendants Long Beach and Long Beach Mortgage Loan Trust 2006-9 "individually and collectively failed to acquire any rights to enforce an alternate means of collection [foreclosure on the Property] . . . of the [Security Instrument]," *id.* at ¶ 47, that "Defendants, individually and collectively cannot enforce the [Security Instrument] recorded with the Travis County Recorder," *id.* at ¶ 48, and that "the July 14, 2008 Assignment of the [Security Instrument] is void." *Id.* at ¶ 52.

## II.   Federal Subject Matter Jurisdiction

Defendants timely removed the case to federal court on grounds of diversity jurisdiction. Notice of Removal [Dkt. #1] at 2. There is complete diversity between the parties. 28 U.S.C. § 1332(a)(1). Plaintiff is domiciled in Texas and is therefore a citizen of Texas for purposes of diversity jurisdiction. Orig. Pet. ¶ 2;   *Coury v. Prot,* 85 F.3d 244, 249 (5th Cir. 1996). Defendants WaMu and Long Beach no longer exist.[1]   Notice of Removal [Dkt. #1] at 3, n.1. At the time of the transactions underlying this suit, however, WaMu was a federal association with its home office in Nevada, and was therefore a citizen of Nevada for purposes of diversity

---

[1] Long Beach was acquired by WaMu, whose assets were subsequently held in receivership by the FDIC and then acquired by JPMorgan Chase Bank, N.A. ("Chase"). Notice of Removal [Dkt. #1] at 3, n.1. Defendants contend the citizenship of Chase, which is not a named Defendant but which is the successor in interest of two of the named Defendants, should not be considered for purposes of evaluating diversity jurisdiction. *Id.* Defendants cite no authority regarding this position, but they do point out that, in any event, Chase is not a citizen of Texas for diversity purposes. *Id.* Chase is a national bank, whose citizenship is determined by 28 U.S.C. § 1348. The Supreme Court has interpreted Section 1348 to fix a national bank's citizenship in the state designated as its main office by the bank's articles of incorporation. *Wachovia Bank, N.A. v. Schmidt,* 546 U.S. 303, 318, 126 S. Ct. 941, (2006). Defendants assert that Chase has been found  to be a citizen of New York, where it maintains its principle place of business, for purposes of diversity jurisdiction. Notice of Removal [Dkt. #1] at 3, n.1. (citing *Excelsior Funds v. JP Morgan Chase Bank, N.A.*, 470 F. Supp. 2d 312, 313 (S.D. N.Y. 2006)). *Excelsior* is an extension of *Wachovia* that has not necessarily been adopted in the Fifth Circuit; it is not clear on this record whether the Fifth Circuit would consider Chase a citizen of the state where its principal place of business is located pursuant to 28 U.S.C. § 1348. The Fifth Circuit, however, has previously found that Chase is a citizen of Ohio, where its main office is located. *Crear v. J.P. Morgan Chase*, No. 10-10875, 2011 U.S. App. LEXIS 6376, *7 (5th Cir. March 28, 2011) (unpublished) (citing *Wachovia*, 546 U.S. at 318). Therefore, complete diversity exists in this action whether or not the citizenship of Chase, as the successor in interest to WaMu and Long Beach, is considered, and regardless of whether Chase is considered a citizen only of the state where its main office is located (Ohio) or of both the states where its main office and its principle place of business are located (Ohio and New York). *See* 28 U.S.C. § 1332(a)(1).

jurisdiction.  *Id.* at 3; 12 U.S.C. § 1464(x)).  Long Beach was a corporation incorporated under Delaware law, with its principle place of business in California, and was therefore a citizen of both Delaware and California for purposes of diversity jurisdiction.  Notice of Removal [Dkt. #1] at 3; 28 U.S.C. § 1332(c)(1).  Defendant SPS is a corporation incorporated under the laws of Utah with its principal place of business in Salt Lake City, Utah, and is therefore a citizen of Utah for purposes of diversity jurisdiction.  Notice of Removal [Dkt. #1] at 3; 28 U.S.C. § 1332(c)(1).  Deutsche Bank is the Trustee for Long Beach Mortgage Loan Trust 2006-9, and therefore the court looks to Deutsche Bank to determine the citizenship of Long Beach Mortgage Loan Trust 2006-9.  *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 464-65, 100 S. Ct. 1779 (1980).  Deutsche Bank is a national banking association with its main office in New York, and therefore it is a citizen of New York for purposes of diversity jurisdiction.  28 U.S.C. § 1348; *Wachovia*, 546 U.S. at 307.  The Doe defendants, none of whom have been named or served, need not be considered in the diversity analysis.  28 U.S.C. § 1441(b)(1).  As none of the Defendants are domiciled in Texas, the Plaintiff's home state, removal was not foreclosed by the "forum state defendant" rule, 28 U.S.C. § 1441(b)(2), and complete diversity exists in this action. 28 U.S.C. § 1332(a)(1).

The amount in controversy requirement of Section 1332 is also satisfied in this case. 28 U.S.C. § 1332(a).  Where a defendant can show, by a preponderance of the evidence, that the amount in controversy is greater than the jurisdictional amount, removal is proper. *White v. FCI U.S.A., Inc.*, 319 F.3d 672, 675 (5th Cir. 2003).  Plaintiff's Original Petition in state court seeks declaratory relief invalidating the Defendants' attempts to enforce a deed of trust through foreclosure on a specific Property.  In such circumstances, the "value of that property represents the amount in controversy" for purposes of diversity jurisdiction. *Farkas v. GMAC Mortgage,*

6

*L.L.C.*, 737 F.3d 338, 342-43 (5th Cir. 2013).   Defendants ask the Court to take judicial notice that the tax assessed value of the Property, recorded in the Travis County Property Tax Record, is $246,014.00.   Notice of Removal [Dkt. #1] at 5, n.2, Ex. B.  Defendants have thus established by a preponderance of the evidence that the amount in controversy in this case exceeds the jurisdictional threshold of $75,000.  *Farkas*, 737 F.3d at 342-43.   Because there is complete diversity between the parties and the amount in controversy requirement is satisfied, federal subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332(a)(1), and Defendants' unchallenged removal of this case to federal court is proper.  28 U.S.C. § 1441(a).

### III.      Standard of Review

Defendants have now moved to dismiss Plaintiff's state court Petition for failure to state a claim on which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true.  *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S. Ct. 1160, 1161 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. v. Twombly*, 550 U.S. 544, 555-57, 127 S. Ct. 1955, 1965-66 (2007).   Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."   *Id.*, 550 U.S. at   570.   The Supreme Court has made clear this plausibility standard is not simply a "probability requirement," but imposes a standard higher

than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).   The standard is properly guided by "[t]wo working principles."   *Id.*   First, although "a court must 'accept as true all of the allegations contained in a complaint,' that tenet is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, 556 U.S. at 678.   Second, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*, 556 U.S. at 679.   Thus, in considering a motion to dismiss, the court must initially identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and determine whether those allegations plausibly give rise to an entitlement to relief. *Id.*, 556 U.S. at 679.   If not, "the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id.* (quoting FED. R. CIV. P. 8(a)(2)).

## IV.     Analysis

Because Plaintiff has failed to respond to Defendant's Motion to Dismiss, the undersigned RECOMMENDS the District Court GRANT the Motion as unopposed.   Local Rule CV-7(e)(2).   In the alternative, the undersigned RECOMMENDS the District Court grant the Motion to Dismiss on its merits for the reasons outlined below.

### A.     Breach of Contract Claim

Plaintiff's breach of contract claim turns on Paragraph 22 of the Security Instrument, which is attached to Defendant's Motion to Dismiss as Exhibit B.   Because this document is referenced in and integral to Plaintiff's complaint, the Court's consideration of the Security Instrument does not convert the Motion to Dismiss into a Motion for Summary Judgment.   FED.

R. Civ. P. 12(d); *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322, 127 S. Ct. 2499

(2007).

Paragraph 22 reads:

> Release: Within a reasonable time after termination and full
> payment of the Extension of Credit, the Lender shall cancel and
> return the Note to the owner of the property and give the owner, in
> recordable form, a release of the lien securing the Extension of
> Credit or a copy of an endorsement of the Note and assignment of
> the lien to a lender that is refinancing the Extension of Credit.
> Owner shall pay only recording costs.     OWNER'S
> ACCEPTANCE OF SUCH RELEASE, OR ENDORSEMENT
> AND   ASSIGNMENT,   SHALL   EXTINGUISH   ALL   OF
> LENDER'S OBLIGATIONS UNDER SECTION 50, ARTICLE
> XVI OF THE TEXAS CONSTITUTION.

Mot. Dismiss [Dkt. 6], Ex. B.  This Paragraph must be read together with the contract as a whole,

which also contains the following Paragraph 18:

> Sale of Note; Change of Loan Servicer.  The Note or a partial
> interest in the Note (together with this Security Instrument) can be
> sold one or more times without prior notice to Borrower.  *A sale*
> *may result in a change in the entity (known as the "Loan*
> *Servicer") that collects monthly payments due under the Note*
> *and this Security Instrument.*  There also may be one or more
> changes of the Loan Servicer unrelated to a sale of the Note. . . .

*Id.* (emphasis added).   Paragraph 18 of the Security Instrument "not only provides for but

contemplates assignment of interests under the Note that result[] in a change of the party entitled

to receive Plaintiff['s] payments but do[] not otherwise affect Plaintiff['s] obligations to make

payments under the Note."  *Summers v. PennyMac Corp*., No. 3:12-CV-01235-L, *20-21 2012

U.S. Dist. LEXIS 168990 (N.D. Tex. Nov. 28, 2012) (interpreting substantively similar language

in a mortgage security instrument).

The transaction between WaMu and Long Beach was a sale of an interest in the Note, as contemplated by Paragraph 18, not a full payment of the Extension of Credit as contemplated by Paragraph 22.  Mot. Dismiss [Dkt. 6], Ex. B.  Plaintiff has not alleged any facts that would suggest Long Beach paid off the debt on her behalf, as opposed to purchasing the right to collect the monthly payments still due and owing under the Note.  *Rice v. JPMorgan Chase Bank, N.A.*, No. H-15-0416, 2015 U.S. Dist. LEXIS 87680, *8-9 (S.D. Tex. July 7, 2015).   In fact, Plaintiff's factual allegations concerning the "bifurcation" of the income stream from the Security Instrument necessarily rest on the acknowledgement that Long Beach purchased WaMu's interest in collecting the mortgage payments due under the Security Interest, and did not pay off the loan on behalf of the Plaintiff.  *See*, *e.g*., Orig. Pet. at ¶¶ 11-22.  Plaintiff cites no authority for the proposition that "a lender must decrease the borrower's loan balance by the amount received from third-party transactions, likely because no court has accepted this novel theory." *Shaver v. Barrett Daffin Frappier Turner & Engel, L.L.P.*, 593 F. App'x 265, 272 (5th Cir. 2014) (collecting cases).[2]

As Plaintiff has not alleged any facts that would establish there was any "termination and full payment of the Extension of Credit" on her behalf under Paragraph 22 of the Security Instument, her breach of contract claim fails for the simple reason that Plaintiff has not performed her part of the bargain.  *Vera v. Bank of Am., N.A*., 569 F. App'x. 349, 352 (5th Cir. 2014) (citing *Sport Supply Group, Inc. v. Columbia Cas. Co*., 335 F.3d 453, 465 (5th Cir. 2003)).

---

[2] See, e.g. *Rosas v. Carnegie Mortgage, LLC*, No. CV 11-7692 CAS CWX, 2012 U.S. Dist. LEXIS 71262 at *8 (C.D. Cal. May 21, 2012) ("[P]laintiffs' theory that lenders that received funds through loan securitizations or credit default swaps must waive their borrowers' obligations fails as a matter of law."); *Taylor v. CitiMortgage, Inc.*, 2:10-CV-505 TS, 2010 U.S. Dist. LEXIS 119808 at *3 (D. Utah Nov. 10, 2010) ("[T]he separate contract that is the result of securitization does not free Plaintiffs from the terms agreed upon in the Deeds of Trust."); *Flores v. Deutsche Bank Nat'l Trust, Co.*, CIV. A. DKC 10-0217, 2010 U.S. Dist. LEXIS 67255 at *5 (D. Md. July 7, 2010) (dismissing a claim alleging that defendants lacked standing to enforce a note because they had already been compensated by credit enhancement policies).

Plaintiff does not allege she paid off her loan or even that she made timely payments on her loan; in fact, the crux of this dispute is that Defendants wish to foreclose on the Property because of Plaintiff's alleged failure to make mortgage payments.  Mot. Dism. [Dkt. #6] at 6-7.  To the extent Plaintiff is in default on her obligations to make payments due and owing under the Security Instrument, she cannot assert a claim for breach of contract arising out of the Security Instrument.  *Vera*, 569 F. App'x at 352; *Sport Supply Group*, 335 F.3d at 465.  Because Plaintiff has failed to allege that WaMu breached the terms of the Security Agreement or that Plaintiff herself performed her obligations under the Security Agreement, the undersigned RECOMMENDS the District Court GRANT Defendants' Motion to Dismiss [Dkt. #6] on this issue and DISMISS Plaintiff's claim against Defendant WaMu for breach of contract.

### B.      Slander of Title Claim

A claim for slander of title requires the plaintiff to allege facts establishing the "(1) uttering and publishing of disparaging words; (2) falsity; (3) malice; (4) special damages; (5) possession of an estate or interest in the property disparaged; and (6) the loss of a specific sale." *Rice*, 2015 U.S. Dist. LEXIS 87680, *11; *see also Davis v. Countrywide Home Loans, Inc.*, 1 F. Supp. 3d 638, 646, n.9 (S.D. Tex. 2014).  Plaintiff alleges Defendants' recording of the 2008 assignment of the Note and Deed of Trust for purposes of foreclosure satisfies these elements because the Defendants were aware, at the time they made the public recording, that WaMu did not possess title to the Note and Deed of Trust to assign, and that the "bifurcation" of the income stream from the Security Instrument destroyed the right of any creditor to foreclose on the note and Deed of Trust as an "alternate means of collection" of the amounts due on the mortgage. Orig. Pet. at ¶¶ 33-38.

Plaintiff's arguments fail as a matter of law.  As discussed above, WaMu was not obligated to release the Note and Deed of Trust when Long Beach purchased an interest in the Security Instrument in 2006.   *See Rice*, 2015 U.S. Dist. LEXIS 87680 at*8-9.  Therefore, Plaintiff's assertion that WaMu could not assign what it did not own, Orig. Pet. at ¶ 36.b, is a *non sequitur*.  Plaintiff alternatively contends there was no recordable interest to assign in 2008 because Long Beach's securitization or "bifurcation" of the note destroyed any ability to foreclose on the Property.  *Id.* at ¶ 36.d.  This "split-the-note" theory is inconsistent with Texas law.  *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 255 (5th Cir. 2013). "[T]he right to recover a personal judgment for a debt secured by a lien on land and the right to have a foreclosure of lien are severable,"  *id.*, and therefore the "bifurcation" of a note and a deed of trust or "securitization" of a note do not destroy the right to foreclose on the underlying lien.  *Id.*; *see also Green v. JP Morgan Chase Bank, N.A.*, 562 F. App'x 238, 240 (5th Cir. 2014); *Shaver*, 593 F. App'x at 274.

Because Plaintiff's "split-the-note" theory fails as a matter of law, *Shaver*, 593 F. App'x at 274, her allegation that "all parties had knowledge the (personal property) security interest as collateral to the [Security Instrument] had been dissolved by operation of law" at the time they recorded the 2008 assignment is unsupported.  Orig. Pet. at ¶ 36.d.  Plaintiff has therefore failed to plead anything more than conclusory allegations with regard to the essential elements of falsity or malice on the part of the Defendants in the recording of the 2008 assignment of the Note and Deed of Trust, and she has failed to state a viable claim for slander of title.  *Rice*, 2015 U.S. Dist. LEXIS 87680, *11, *Twombly*, 550 U.S. at 555-57. [3]  Because Plaintiff has failed to

---

[3] The court further notes that a slander of title claim requires the plaintiff to allege facts that would establish the loss of a specific sale.  *Rice*, 2015 U.S. Dist. LEXIS 87680 at * 12-13.  The mere fact that the recording of the 2008 assignment was incident to Defendant's attempt to sell the property in foreclosure does not satisfy this element.  *Id.* In addition to the deficiencies noted above, Plaintiff's slander of title claim is insufficiently plead for this reason.  *Id.*

state a viable claim for slander of title, the undersigned RECOMMENDS the District Court GRANT Defendants' Motion to Dismiss [Dkt. #6] on this issue and DISMISS Plaintiff's claim for slander of title against all Defendants.

### C.      Claims for Declaratory Relief Invalidating Assignment/Foreclosure

Plaintiff seeks thirteen different declarations relating to her theory that the right to foreclose on the Property has been extinguished, either by the 2006 purchase of the Security Instrument or its "bifurcation" through securitization.  Orig. Pet. at ¶¶ 40-52.  As discussed above, both of these legal theories are foreclosed by Texas law.  *Shaver*, 593 F. App'x at 272; *Martins*, 722 F.3d at 255.  Therefore, Plaintiff cannot obtain declaratory relief invalidating the right to foreclosure, the Security Instrument, or the assignment of the Security Instrument based on these theories.  *See Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 243 (5th Cir. 2014) (failure to state a claim on underlying causes of action warrants dismissal of related claims for declaratory judgment).

Two of Plaintiff's requested declarations concern alleged deficiencies in the transfer or assignment of the note.  Orig. Pet. at ¶¶ 49, 50 (alleging Defendants failed to comply with  Local Texas Government Code, Section 192.007, regarding recording of assignments, and Texas Business and Commerce Code, Section 3.203, regarding transfer of an instrument).  Plaintiff, however, has no standing to challenge the technical sufficiency of the assignments.  *Reinagel v. Deutsche Bank Nat'l Trust Co*., 735 F.3d 220, 226 (5th Cir. 2013) ("'[Texas] law is settled that the obligors of a claim . . . may not defend [against an assignee's effort to enforce the obligation] on any ground which renders the assignment voidable only,'") (quoting *Tri-Cities Constr., Inc. v. American Nat'l Ins. Co*., 523 S.W.2d 426, 430 (Tex. App.—Houston [1st Dist.] 1975, no writ)).

Therefore, Plaintiff cannot obtain declaratory relief on these grounds.  *Williams*, 560 F. App'x at 243.[4]

Because Plaintiff has failed to state any underlying claim for which declaratory relief can be granted, *id.*, the undersigned RECOMMENDS the District Court GRANT Defendants' Motion to Dismiss [Dkt. #6] on this issue and DISMISS Plaintiff's claims for declaratory judgment.

## V.    Conclusion

For the reasons outlined in detail above, the undersigned RECOMMENDS the District Court GRANT Defendants' Motion to Dismiss [Dkt. #6] without prejudice as unopposed.

In the alternative, the undersigned RECOMMENDS the District Court GRANT Defendants' Motion to Dismiss [Dkt. #6] on its merits and DISMISS each of Plaintiff's claims. Because each of Plaintiff's claims fail as a matter of law, it appears that any amendment would be futile.  *Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010).  Accordingly, should the District Court grant the Motion to Dismiss [Dkt. #6] on its merits, the undersigned recommends Plaintiff's claims be DISMISSED WITH PREJUDICE.

## VI.    Objections

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are

---

[4] The Court does not understand Plaintiff to challenge the timing or manner of Long Beach's assignment of its interest to the Long Beach Mortgage Loan Trust 2006-9, but to the extent Plaintiff is attempting to assert the transfer was untimely or otherwise deficient under the terms of the pooling agreement (PSA), she lacks standing to challenge this transaction, to which she is not a party, for the same reasons she lacks standing to challenge the assignment of the Security Instrument.  *See Bond v. Barrett Daffin Frappier Turner & Engel, LLP*, C.A. NO. G-12-188, 2013 U.S. Dist. LEXIS 55924. *27-28 (S.D. Tex. Mar. 22, 2013) (collecting cases).

being made.  The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C);  *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED July 16, 2015

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE